UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| AMBER P. ROBERTS,<br><br>               Plaintiff,<br><br>    v.<br><br>MICHAEL J. ASTRUE, Commissioner of the Social Security Administration,<br><br>               Defendant. | CASE NO. 11cv5296-BHS-JRC<br><br>REPORT AND RECOMMENDATION ON PLAINTIFF'S COMPLAINT<br><br>Noting Date: March 9, 2012 |

This matter has been referred to United States Magistrate Judge J. Richard Creatura pursuant to 28 U.S.C. § 636(b)(1) and Local Magistrate Judge Rule MJR 4(a)(4), and as authorized by Mathews, Secretary of H.E.W. v. Weber, 423 U.S. 261, 271-72 (1976). This matter has been fully briefed. (See ECF Nos. 14, 15, 16).

The ALJ failed to provide specific and legitimate reasons supported by substantial evidence in the record for her failure to credit the opinions of examining physicians regarding specific functional limitations of plaintiff. For these reasons and based on the relevant record, the

Court concludes that this matter should be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) to the Commissioner for further administrative proceedings.

## BACKGROUND

Plaintiff, AMBER P. ROBERTS, was born in 1981 and was twenty-five years old on her alleged date of disability onset of February 1, 2007 (Tr. 149). Plaintiff completed eleventh grade and did not attend special education classes (Tr. 171). She has work experience as a landscape laborer, event set-up worker, painter's helper and truck unloader (Tr. 92-93). Plaintiff has at least the severe impairments of schizophrenia (paranoid type), social anxiety, and panic disorder (see Tr. 35).

## PROCEDURAL HISTORY

Plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income benefits in August, 2007 (Tr. 149-54). Her applications were denied initially and following reconsideration (Tr. 108-16). Her requested hearing was held before Administrative Law Judge Mattie Harvin-Woode ("the ALJ") on December 1, 2009 (Tr. 43-103). On January 28, 2010, the ALJ issued a written decision finding that plaintiff was not disabled pursuant to the Social Security Act (Tr. 30-42).

On February 25, 2011, the Appeals Council denied plaintiff's request for review, making the written decision by the ALJ the final agency decision subject to judicial review (Tr. 1-5). See 20 C.F.R. § 404.981. In April, 2011, plaintiff filed a complaint in this Court, seeking judicial review of the ALJ's written decision (see ECF No. 3). On July 18, 2011, defendant filed the sealed administrative record in this matter ("Tr.") (see ECF No. 10).

In her Opening Brief, plaintiff challenges: (1) the ALJ's finding that plaintiff's depression was not a severe impairment; (2) the ALJ's review of the opinions of examining

1  physicians Dr. Kimberly Wheeler, Ph.D. ("Dr. Wheeler"), Dr. Ian Kodish, M.D. ("Dr. Kodish"),
2  and Dr. Norma Brown, Ph.D. ("Dr. Brown"); and (3) the ALJ's review of the lay testimony (see
3  ECF No. 14, pp. 1-2).

STANDARD OF REVIEW

Plaintiff bears the burden of proving disability within the meaning of the Social Security Act (hereinafter "the Act"). Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999); see also Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment "which can be expected to result in death or which has lasted, or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Plaintiff is disabled under the Act only if plaintiff's impairments are of such severity that plaintiff is unable to do previous work, and cannot, considering the plaintiff's age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); see also Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing* Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1999)). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such "'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989) (*quoting* Davis v. Heckler, 868 F.2d 323, 325-26 (9th Cir. 1989)); see also Richardson v. Perales, 402 U.S. 389, 401 (1971). Regarding the question of whether or not

substantial evidence supports the findings by the ALJ, the Court should "'review the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion.'" Sandgathe v. Chater, 108 F.3d 978, 980 (1996) (per curiam) (*quoting* Andrews, supra, 53 F.3d at 1039). In addition, the Court "'must independently determine whether the Commissioner's decision is (1) free of legal error and (2) is supported by substantial evidence.'" See Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2006) (*citing* Moore v. Comm'r of the Soc. Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002)); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).

According to the Ninth Circuit, "[l]ong-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and actual findings offered by the ALJ - - not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking." Bray v. Comm'r of SSA, 554 F.3d 1219, 1226-27 (9th Cir. 2009) (*citing* SEC v. Chenery Corp., 332 U.S. 194, 196 (1947) (other citation omitted)); see also Stout v. Commissioner of Soc. Sec., 454 F.3d 1050, 1054 (9th Cir. 2006) ("we cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision") (citations omitted). In the context of social security appeals, legal errors committed by the ALJ may be considered harmless where the error is irrelevant to the ultimate disability conclusion. Stout, supra, 454 F.3d at 1054-55 (reviewing legal errors found to be harmless).

## DISCUSSION

1. <u>The ALJ failed to review properly the medical evidence</u>.

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician or psychologist. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996) (*citing* Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991); Pitzer v.

Sullivan, 908 F.2d 502, 506 (9th Cir. 1990)). Even if a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Lester, supra, 81 F.3d at 830-31 (*citing* Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995)). The ALJ can accomplish this by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating h[er] interpretation thereof, and making findings." Reddick, supra, 157 F.3d at 725 (*citing* Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).

In addition, the ALJ must explain why her own interpretations, rather than those of the doctors, are correct. Reddick, supra, 157 F.3d at 725 (*citing* Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988)). However, the ALJ "need not discuss *all* evidence presented." Vincent on Behalf of Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (per curiam). The ALJ must only explain why "significant probative evidence has been rejected." Id. (*quoting* Cotter v. Harris, 642 F.2d 700, 706-07 (3d Cir. 1981)).

In general, more weight is given to a treating medical source's opinion than to the opinions of those who do not treat the claimant. Lester, supra, 81 F.3d at 830 (*citing* Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987)). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, supra, 81 F.3d at 830 (citations omitted); see also 20 C.F.R. § 404.1527(d).

According to Social Security Ruling ("SSR") 96-8p, a residual functional capacity assessment by the ALJ "must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p, 1996 SSR LEXIS 5 at *20.

a. The ALJ failed to review properly the opinions of examining physicians Dr. Kimberly Wheeler, Ph.D. ("Dr. Wheeler"), and Dr. Norma Brown, Ph.D. ("Dr. Brown")

Dr. Wheeler examined plaintiff on August 8, 2007 and on June 4, 2008 (see Tr. 349-63). On both occasions, Dr. Wheeler opined that plaintiff suffered from at least marked limitations in her ability to relate appropriately to co-workers and supervisors; to interact appropriately in public contacts; to respond appropriately to and tolerate the pressure and expectations of a normal work setting; and, to control physical or motor movements and maintain appropriate behavior (Tr. 351, 358).

Dr. Brown examined plaintiff on April 16, 2009 (Tr. 377-89). Like Dr. Wheeler, Dr. Brown opined that plaintiff suffered from at least marked limitations in her ability to relate appropriately to co-workers and supervisors; to interact appropriately in public contacts; to respond appropriately to and tolerate the pressure and expectations of a normal work setting; and, to control physical or motor movements and maintain appropriate behavior (Tr. 379).

The ALJ did not credit fully the opinions by Drs. Wheeler and Brown regarding plaintiff's functional limitations on her ability to work (see Tr. 40). First, the ALJ indicated that Drs. Wheeler and Brown "relied almost exclusively on the claimant's self-report of which there are significant credibility concerns" (id.). Based on a review of the relevant record, as discussed further below, the Court concludes that this finding by the ALJ is not supported by substantial evidence in the record as a whole.

First, both Drs. Wheeler and Brown conducted mental status examinations at all of their evaluations of plaintiff, including conducting many tests of plaintiff's abilities and limitations (see Tr. 353-54, 360-62, 381-86). The Court notes that "experienced clinicians attend to detail and subtlety in behavior, such as the affect accompanying thought or ideas, the significance of

1 | gesture or mannerism, and the unspoken message of conversation. The Mental Status
2 | Examination allows the organization, completion and communication of these observations."
3 | Paula T. Trzepacz and Robert W. Baker, The Psychiatric Mental Status Examination 3 (Oxford
4 | University Press 1993). "Like the physical examination, the Mental Status Examination is termed
5 | the *objective* portion of the patient evaluation." Id. at 4 (emphasis in original).

6 |     Specifically, the Court observes that Dr. Wheeler opined that plaintiff's speech
7 | demonstrated motor retardation and that plaintiff was incessantly moving her foot, demonstrating
8 | moderate motor agitation (Tr. 350). Dr. Wheeler indicated her objective observation of plaintiff's
9 | "flat affect, overly steady eye gaze [and] lack of usual voice inflection," which Dr. Wheeler
10 | opined were prominent symptoms of plaintiff's schizophrenia (Tr. 351). Dr. Wheeler observed
11 | that plaintiff demonstrated flattened pitch in her speech, an unwavering gaze and a bobbing knee
12 | (Tr. 353). Dr. Wheeler observed that plaintiff's thought process was racing and cluttered and that
13 | her thought content was paranoid and delusional, including thought insertion and broadcasting
14 | (id.). Dr. Wheeler observed that plaintiff was keyed up due to anxiety and was intensely focused
15 | (id.). Finally, Dr. Wheeler also observed that plaintiff was "having a very hard time grasping
16 | intent of [her] questions" (Tr. 345).

17 |     In a similar fashion, the Court observes that Dr. Brown also indicated her objective
18 | observations of plaintiff. Dr. Brown noted that plaintiff was not able to sit still, and paced around
19 | the room (see Tr. 378). Dr. Brown observed "long response latencies" by plaintiff and attributed
20 | these to plaintiff's social anxiety (Tr. 379). Dr. Brown also observed that plaintiff was tense and
21 | shaking (id.), and that she had "shaking hands" (Tr. 381). Dr. Brown observed that plaintiff's
22 | affect was blunted, her mood was anxious and that her thought content was paranoid (id.).
23 |
24 |

For the reasons stated, and based on the relevant record, the Court concludes that the ALJ's finding that Drs. Wheeler and Brown "relied almost exclusively on the claimant's self-report" is not based on substantial evidence in the record as a whole (see Tr. 40). The ALJ also supported her failure to credit fully the opinions of Drs. Brown and Wheeler by concluding that "such opinions are inconsistent with mental health treatment records, which largely show significant improvement with medication management" (id.).

However, the ALJ fails to explain how the fact that plaintiff experienced improvement with medication is inconsistent with the opinions of Drs. Brown and Wheeler. First, both Drs. Brown and Wheeler indicated awareness of plaintiff's improvement with medication (Tr. 352, 379). However, neither Dr. Wheeler nor Dr. Brown opined that plaintiff improved to such an extent that she no longer suffered from marked or severe limitations on her ability to work.

On June 4, 2008, when examining plaintiff for the second time, Dr. Wheeler opined that although medication and sleep helped plaintiff, they "have not yet brought any inter-episodic recovery" (Tr. 352). Similarly, on April 16, 2009, Dr. Brown indicated that although plaintiff had been taking medication for two years as prescribed by Dr. Karin Barkin, M.D. ("Dr. Barkin"), she "still hears voices" (Tr. 379). The ALJ appears to interpret the medical evidence differently than both Dr. Brown and Dr. Wheeler, however, an ALJ must explain why her own interpretations, rather than those of the doctors, are correct. Reddick, supra, 157 F.3d at 725 (*citing* Embrey, supra, 849 F.2d at 421-22).

Although the ALJ discusses treatment records from physician Dr. Barkin in the context of plaintiff's credibility, Dr. Barkin does not appear to have opined that plaintiff did not suffer marked limitations in her ability to relate appropriately to co-workers and supervisors; to interact appropriately in public contacts; to respond appropriately to and tolerate the pressure and

1 expectations of a normal work setting; or, to control physical or motor movements and maintain

2 appropriate behavior. Therefore, the ALJ has not demonstrated that the opinion by both

3 examining psychologist Dr. Brown and examining psychologist Dr. Wheeler that plaintiff

4 suffered from marked or severe limitations in these abilities is inconsistent with Dr. Barkin's

5 opinion. In addition, the ALJ did not indicate that she was giving any weight to Dr. Barkin's

6 opinion and did not rely explicitly on Dr. Barkin's opinion when evaluating the medical

7 evidence. See Bray , supra, 554 F.3d at 1226-27 (*citing* Chenery Corp., 332 U.S. at 196 ("[l]ong-

8 standing principles of administrative law require us to review the ALJ's decision based on the

9 reasoning and actual findings offered by the ALJ - - not *post hoc* rationalizations that attempt to

10 intuit what the adjudicator may have been thinking")

11       The ALJ failed to credit the opinions from examining doctors regarding plaintiff's

12 limitations on her ability to work based on the ALJ's own interpretation of the medical record.

13 The doctors were aware of plaintiff's improvement with medication and nevertheless opined that

14 plaintiff suffered the foresaid various functional limitations.

15       For the reasons stated and based on the relevant record, the Court finds that the ALJ's

16 failure to credit fully the opinions by examining doctors, Dr. Wheeler and Dr. Brown, is not

17 supported by substantial evidence in the record as a whole. See Reddick, supra, 157 F.3d at 725;

18 Lester, supra, 81 F.3d at 830-31. Although the ALJ indicates that her residual functional capacity

19 assessment "is supported by the medical opinions of Dr. Postovoit, Dr. van Dam and Dr.

20 Kodish," the ALJ did not credit fully any of the opinions of these doctors, or any specific

21 opinions of any of the doctors, regarding plaintiff's limitations on her ability to function in a

22 work environment (see Tr. 39-40). Instead, the ALJ discounts aspects of every doctor's

23

24

functional assessment regarding plaintiff's functional limitations, without support from a different functional analysis from another doctor.

Following remand of this matter, if the ALJ determines again not to rely on the functional assessment from plaintiff's examining doctors, and no doctor has opined that plaintiff does not suffer from the functional limitations as opined by plaintiff's examining doctors, the ALJ must explain adequately why her interpretation of the medical evidence is more correct than those of the doctors. See Reddick, supra, 157 F.3d at 725 see also Blankenship, supra, 874 F.2d at 1121 ("When mental illness is the basis of a disability claim, clinical and laboratory data may consist of the diagnosis and observations of professional trained in the field of psychopathology. The report of a psychiatrist should not be rejected simply because of the relative imprecision of the psychiatric methodology or the absence of substantial documentation") (*quoting* Poulin v. Bowen, 817 F.2d 865, 873074 (D.C. Cir. 1987)). This is important especially in this case, where plaintiff suffers from mental impairments and the ALJ seeks to discount the opinions of examining doctors who have performed mental status examinations.

The mental status examination generally is conducted by medical professionals skilled and experienced in psychology and mental health. Although "anyone can have a conversation with a patient, [] appropriate knowledge, vocabulary and skills can elevate the clinician's 'conversation' to a 'mental status examination.'" Trzepacz, supra, The Psychiatric Mental Status Examination 3. A mental health professional is trained to observe patients for signs of their mental health not rendered obvious by the patient's subjective reports, in part because the patient's self-reported history is "biased by their understanding, experiences, intellect and personality" (id. at 4), and, in part, because it is not uncommon for a person suffering from a mental illness to be unaware that her "condition reflects a potentially serious mental illness."

Van Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir. 1996). Therefore, it is important especially in this matter for the ALJ to credit appropriately the opinions of plaintiff's doctors and psychologists.

b. Dr. Ian Kodish, M.D. ("Dr. Kodish"), State agency consulting physician

Regarding state agency medical consultants, the ALJ is "required to consider as opinion evidence" their findings, and also is "required to explain in h[er] decision the weight given to such opinions." Sawyer v. Astrue, 303 Fed. Appx. 453, 455, 2008 U.S. App. LEXIS 27247 at **3 (9th Cir. 2008) (citations omitted) (unpublished opinion). According to Social Security Ruling (hereinafter "SSR") 96-6p, "[a]dministrative law judges . . . . may not ignore the[] opinions [of state agency medical and psychological consultants] and must explain the weight given to the opinions in their decisions." SSR 96-6p, 1996 WL 374180 at *2. Likewise, SSR 96-5p, provides that State agency "medical and psychological consultant findings about the nature and severity of an individual's impairment(s), including any RFC assessments, become opinion evidence," and "administrative law judges . . . . must address the[se] opinions in their decisions." SSR 96-5p, 1996 WL 374183 at *6.

The ALJ gave great weight to some of Dr. Kodish's opinions (Tr. 39). However, the ALJ gave lesser weight to Dr. Kodish's opinion that detailed and complex tasks were significantly difficult for plaintiff because of the ALJ's finding that this opinion by Dr. Kodish appeared "to be based on the claimant's self-report" (Tr. 39-40). However, the ALJ did not support this finding with any evidence or citation to the opinion of Dr. Kodish (see id.). The Court also notes that Dr. Kodish performed a mental status examination and indicated many objective observations (Tr. 310-12). For example, Dr. Kodish tested plaintiff's memory and observed that although she was able to state a five-digit span correctly forwards, she "was unable to state any

REPORT AND RECOMMENDATION ON
PLAINTIFF'S COMPLAINT - 11

backwards" (Tr. 311). Dr. Kodish specifically indicated that he based his opinion regarding plaintiff's difficulty with complex tasks in part of plaintiff's poor memory (see Tr. 312). For these reasons, the Court concludes that the finding by the ALJ that Dr. Kodish based his opinion regarding detailed and complex tasks being significantly difficult for plaintiff "on the claimant's self-report" is not based on substantial evidence in the record as a whole (see Tr. 39-40).

The ALJ also failed to credit fully Dr. Kodish's opinion that plaintiff had difficulty accepting instructions from supervisors based on a finding that the basis for Dr. Kodish's opinion was unclear (id.). Although the ALJ did not specify what made the basis of this one of Dr. Kodish's opinions unclear, the ALJ gave this opinion less weight (id.). The ALJ failed to give any reasons for her rejection of the opinion of Dr. Kodish that plaintiff would have a significant challenge handling the usual stress of a workplace (Tr. 313). Therefore, the ALJ rejected without explanation this opinion regarding plaintiff's specific functional limitations, committing legal error. See Sawyer, supra, 303 Fed. Appx. at 455; SSR 96-5p, 1996 WL 374183 at *6.

For the reasons discussed and based on the relevant record, the Court concludes that the ALJ erred in his review of Dr. Kodish's opinions. Dr. Kodish's opinions should be evaluated anew following remand of this matter.

2. <u>The issue of whether or not plaintiff's depression was a severe impairment should be assessed anew following remand of this matter</u>.

Step-two of the administration's evaluation process requires the ALJ to determine whether or not the claimant "has a medically severe impairment or combination of impairments." Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996) (citation omitted); 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii) (1996). The Administrative Law Judge "must consider the combined effect of all of the claimant's impairments on her ability to function, without regard to

whether each alone was sufficiently severe." Smolen, supra, 80 F.3d at 1290 (citations omitted). The "step-two determination of whether a disability is severe is merely a threshold determination of whether the claimant is able to perform his past work." Hoopai v. Astrue, 499 F.3d 1071, 1076 (9th Cir. 2007).

An impairment is "not severe" if it does not "significantly limit" the ability to conduct basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Basic work activities are "abilities and aptitudes necessary to do most jobs," including, for example, "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling; capacities for seeing, hearing and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting." 20 C.F.R. § 404.1521(b). "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual[']s ability to work.'" Smolen, supra, 80 F.3d at 1290 (*quoting* Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988) (*adopting* Social Security Ruling "SSR" 85-28)). The step-two analysis is "a *de minimis* screening device to dispose of groundless claims." Smolen, 80 F.3d at 1290 (*citing* Bowen v. Yuckert, 482 U.S. 137, 153-54 (1987)).

According to Social Security Ruling 96-3b, "[a] determination that an individual's impairment(s) is not severe requires a careful evaluation of the medical findings that describe the impairment(s) (*i.e.*, the objective medical evidence and any impairment-related symptoms), and an informed judgment about the limitations and restrictions the impairments(s) and related symptom(s) impose on the individual's physical and mental ability to do basic work activities." SSR 96-3p, 1996 SSR LEXIS 10 at *4-*5 (*citing* SSR 96-7p); see also Slayman v. Astrue, 2009

U.S. Dist. LEXIS 125323 at *33-*34 (W.D. Wa. 2009). If a claimant's impairments are "not severe enough to limit significantly the claimant's ability to perform most jobs, by definition the impairment does not prevent the claimant from engaging in any substantial gainful activity." Bowen, supra, 482 U.S. at 146. Plaintiff bears the burden to establish by a preponderance of the evidence the existence of a severe impairment that prevented performance of substantial gainful activity and that this impairment lasted for at least twelve continuous months. 20 C.F.R. §§ 404.1505(a), 404.1512, 416.905, 416.1453(a), 416.912(a); Bowen, supra, 482 U.S. at 146; see also Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998) (*citing* Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995)). It is the claimant's burden to "'furnish[] such medical and other evidence of the existence thereof as the Secretary may require.'" Bowen, 482 U.S. at 146 (*quoting* 42 U.S.C. § 423(d)(5)(A)) (*citing* Mathews v. Eldridge, 424 U.S. 319, 336 (1976)); see also McCullen v. Apfel, 2000 U.S. Dist. LEXIS 19994 at *21 (E.D. Penn. 2000) (*citing* 42 U.S.C. § 405(g); 20 C.F.R. §§ 404.1505, 404.1520).

Here, the ALJ included the following discussion in the step two analysis of severe impairments:

> The claimant was also diagnosed with depression. However, this diagnosis did not appear until June 2009. Subsequent treatment records only reveal some mention of depressive symptoms (internal citation to Exhibit 15F). Accordingly, this is found to be non-severe.

(Tr. 35).

First, the ALJ relies on the finding that plaintiff's diagnosis for depression did not appear until June 2009 (see Tr. 35). However, Dr. Karin Barkin, M.D. ("Dr. Barkin") indicated that plaintiff was exhibiting symptoms of depression in January, 2009 (Tr. 309). The ALJ also relies on a finding that there was only some mention of depressive symptoms after June, 2009 (see Tr. 35). However, in making this finding, the ALJ fails to mention significant probative evidence in

1 the record after June, 2009, such as the findings by Dr. Barkin that plaintiff continued to have
2 symptoms of depression on September 3, 2009 and that plaintiff's affect was congruent with her
3 depressed mood (Tr. 442; see also, Tr. 438-43). See Vincent, supra, 739 F.2d at 1394-95.

4     The ALJ indicates specifically that she reviewed evidence of depression after June, 2009
5 (see Tr. 35). Therefore, it is not clear if the ALJ even considered evidence of depression
6 occurring in the record before this date, such as the fact that plaintiff scored in the range of
7 "severe depression" on the beck depression inventory ("BDI-II") on April 16, 2009 (see Tr. 377;
8 see also Tr. 377-78, 381, 390, 397, 401, 433). Also on April 16, 2009, Dr. Brown opined that
9 plaintiff's depressed mood was "marked" and her affect was blunted (Tr. 378, 381).

10     In addition, the Court already has determined that this matter should be remanded for
11 further consideration due to the ALJ's errors in her review of the medical evidence. For the
12 reasons discussed and based on the relevant record, the Court concludes that the issue of whether
13 or not plaintiff's depression was a severe impairment should be evaluated anew following
14 remand.

15     3. <u>The lay testimony should be evaluated anew following remand</u>.

16     The Court already has concluded that the ALJ erred in her review of the medical
17 evidence, see supra, section 1. In addition, the ALJ rejected the lay testimony in part based on
18 "the multiple treatment records that document the claimant's improvement with medication" (Tr.
19 40). The ALJ does not specify how the lay testimony is inconsistent with plaintiff's improvement
20 (see id.). For these reasons, the lay testimony should be evaluated anew following remand of this
21 matter.

4. <u>This matter should be remanded for further administrative proceedings</u>.

The Ninth Circuit has put forth a "test for determining when evidence should be credited and an immediate award of benefits directed." <u>Harman v. Apfel</u>, 211 F.3d 1172, 1178, 2000 U.S. App. LEXIS 38646 at **17 (9th Cir. 2000). It is appropriate where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

<u>Harman</u>, 211 F.3d at 1178 (*quoting* <u>Smolen v. Chater</u>, 80 F.3d 1273, 1292 (9th Cir.1996)).

Here, outstanding issues must be resolved. <u>See</u> <u>Smolen</u>, 80 F.3d at 1292. There is a large volume of medical and other evidence, and the record is not conclusive.

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. <u>Reddick v. Chater</u>, 157 F.3d 715, 722 (9th Cir. 1998); <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1043 (9th Cir. 1995). If the medical evidence in the record is not conclusive, sole responsibility for resolving conflicting testimony and questions of credibility lies with the ALJ. <u>Sample v. Schweiker</u>, 694 F.2d 639, 642 (9th Cir. 1999) (*quoting* <u>Waters v. Gardner</u>, 452 F.2d 855, 858 n.7 (9th Cir. 1971) (*citing* <u>Calhoun v. Bailar</u>, 626 F.2d 145, 150 (9th Cir. 1980))).

Therefore, remand is appropriate to allow the Commissioner the opportunity to consider properly all of the medical evidence as a whole and to incorporate the properly considered medical evidence into the consideration of plaintiff's residual functional capacity. <u>See</u> <u>Sample</u>, <u>supra</u>, 694 F.2d at 642.

## CONCLUSION

The ALJ failed to provide specific and legitimate reasons supported by substantial evidence in the record for her failure to credit the opinions of examining physicians regarding specific functional limitations of plaintiff. Based on this reason and the relevant record, the undersigned recommends that this matter be **REVERSED** and **REMANDED** to the administration for further consideration pursuant to sentence four of 42 U.S.C. § 405(g). **JUDGMENT** should be for **PLAINTIFF** and the case should be closed.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of de novo review by the district judge. See 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on March 9, 2012, as noted in the caption.

Dated this 16th day of February, 2012.

/s/ J. Richard Creatura

J. Richard Creatura
United States Magistrate Judge